Rockingham
No. 2012-047

## THE STATE OF NEW HAMPSHIRE

v.

## BRENDAN BISBEE

Argued: February 21, 2013
Opinion Issued: May 14, 2013

*Michael A. Delaney*, attorney general (*John J. McCormack*, attorney, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. The defendant, Brendan Bisbee, appeals his convictions by a jury on five counts of perjury. *See* RSA 641:1, I(a) (2007). On appeal, he argues that the Superior Court (*McHugh*, J.) erred in: (1) denying his motion to dismiss the indictments as insufficient; and (2) denying his request for a mistrial following the prosecutor's closing argument. We affirm.

The record establishes the following pertinent facts. In January 2011, a Rockingham County grand jury returned seven indictments against the defendant charging seven separate counts of perjury. Four indictments charged that the defendant committed perjury when he testified before a grand jury, on or about March 6, 2009, that: (1) "Kristin Ruggiero had never been to the state of Tennessee"; (2) "he could not remember if he had picked up Kristin Ruggiero at the Oakland [California] Airport on March 20, 2008"; (3) "a police officer did not come to 13 Pinewood Road during the evening of May 4, 2008"; and (4) "Kristin Ruggiero had not used his cell phone to call 679-2225 during the evening of May 4, 2008." Three indictments charged that the defendant committed perjury when he testified in the criminal trial of *State v. Kristin Ruggiero*, Docket No. 09-S-1290-1302, in the Rockingham County Superior Court, on or about April 27, 2010, that: (1) "he could not remember if he had picked up Kristin Ruggiero at the Oakland Airport on March 20, 2008"; (2) "a police officer did not come to 13 Pinewood Road during the evening of May 4, 2008"; and (3) "he could not remember if he or Kristin Ruggiero had used his cell phone to call 679-2225 during the evening of May 4, 2008."

Before trial, the defendant moved to dismiss the indictments, arguing that they: (1) failed to "fully and substantially inform him of the allegations and accusations against him"; and (2) failed to allege "an element of the offense of [p]erjury, i.e. a statement by the [d]efendant under oath." He asserted that the indictments did not allege specific statements made by him. The superior court denied the motion. The defendant then filed a motion to reconsider, repeating his argument that "all of these indictments are insufficient on their face since none of them alleges any 'statement' actually made by the [d]efendant." The court denied the motion. The defendant's renewal of the motion at trial was similarly unsuccessful.

At the conclusion of the prosecutor's closing argument, the defendant moved for a mistrial. He argued that the prosecutor had improperly interjected his personal opinion into the closing when he called the

defendant a "dirty cop" and a "mope." The court denied the defendant's motion. The court explained: "[T]he only problem with [the State's argument] is it's overly descriptive." After the jury found the defendant guilty of five counts of perjury and acquitted him on the remaining two counts, he filed this appeal.

## I. Sufficiency of the Indictments

The defendant first argues that his convictions must be vacated because the indictments charging him with perjury "did not adequately allege an offense." He maintains that he did not make the statements alleged in the indictments, which, he contends, merely represent a "summary or gist" of his prior testimony. He argues that because RSA 641:1, I(a) "criminalizes the making of false statements, not the creation of false impressions," "[a]n indictment which summarizes testimony in such a way as to encompass different statements is not sufficiently specific." Citing the Federal Constitution and Part I, Article 15 of the State Constitution, he contends that such indictments are "insufficiently specific to provide fair notice, to assure jury unanimity, and to protect against double jeopardy."

Because the defendant's argument raises questions of constitutional law and statutory interpretation, our review is *de novo. State v. Marshall,* 162 N.H. 657, 661 (2011). We first consider the defendant's argument under the State Constitution and rely upon federal law only to aid in our analysis. *State v. Ball,* 124 N.H. 226, 231-33 (1983).

Part I, Article 15 of the State Constitution provides that "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him." N.H. CONST. pt. I, art. 15. "To meet this constitutional standard, an indictment must inform a defendant of the offense with which he is charged with sufficient specificity to enable him to prepare for trial and at the same time protect him from being put in jeopardy a second time for the same offense." *Marshall,* 162 N.H. at 661. "It is not enough merely to state the crime with which a defendant is being charged; the indictment must include the elements of the offense with sufficient allegations to identify the offense in fact." *Id.* "An indictment generally is sufficient if it recites the language of the relevant statute; it need not specify the means by which the crime was accomplished or other facts that are not essential to the elements of the crime." *State v. Ortiz,* 162 N.H. 585, 588 (2011) (quotation omitted). The question is not whether the indictment could have been more certain and comprehensive, but whether it contains the elements of the offense and enough facts to warn a defendant of the specific charges against him. *Marshall,* 162 N.H. at 661-62.

■ RSA 641:1, I(a) provides that a person commits perjury "if in any official proceeding . . . [h]e makes a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and he does not believe the statement to be true." Thus, we agree with the defendant that the statute criminalizes the making of false statements, not the creation of false impressions. *See State v. Settle*, 132 N.H. 626, 632 (1990) ("In an indictment for perjury, the making of the assertion under oath concerning a particular material fact is the gravamen of the crime."); *State v. Sands*, 123 N.H. 570, 589 (1983) (noting that perjury indictments quoted the defendant's allegedly false statements). We are not persuaded, however, by the defendant's argument that an indictment for perjury "which summarizes testimony in such a way as to encompass different statements is not sufficiently specific." Courts have rejected this argument. *See Commonwealth v. Allison*, 751 N.E.2d 868, 881 (Mass. 2001) (perjury indictment sufficient although it alleged the defendant's testimony "in substance and effect" because "[t]here is no requirement that a particular statement serve as the basis for a perjury indictment" (quotation omitted)); *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989) ("The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. It is sufficient if the indictment or information provides such testimony in substance." (citation and quotations omitted)); *People v. Aud*, 288 N.E.2d 453, 454 (Ill. 1972) (perjury indictment insufficient because it failed to "set forth the alleged false statement either verbatim or in its substance").

■ We conclude that an indictment for perjury that attributes a false statement to the defendant does not fail for insufficiency even though the alleged statement represents a summary of the defendant's testimony. Such an indictment informs the defendant of the allegedly perjurious statement that the State must prove at trial. The defendant may review the transcripts of his prior testimony and argue at trial that he did not make the alleged statement. He may also raise the defense of double jeopardy if the State seeks to re-prosecute him for perjury for the same alleged statement. *Cf. State v. Therrien*, 129 N.H. 765, 770 (1987) ("[A] defendant charged with a specific offense may effectively invoke double jeopardy protection [and] educate his counsel on whatever he knows about the offense, so that investigation, discovery and other trial preparation can begin.").

■ To the extent the defendant argues that the indictments are insufficient because he did not make the statements contained therein, we reject this argument. *See United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in criminal cases.

Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face."); *Yasak*, 884 F.2d at 1001 ("A motion to dismiss is not intended to be a summary trial of the evidence." (quotation omitted)); *State v. Parkman*, 106 So. 3d 378, 381 (Miss. Ct. App. 2012) ("Unlike civil proceedings, there is no summary-judgment procedure in criminal cases."). In evaluating the sufficiency of a perjury indictment, the trial court need not compare the allegedly perjurious statement with the defendant's prior testimony. *Cf. State v. Strong*, 60 A.3d 1286, 1289 (Me. 2013) ("An indictment is subject to dismissal for failure to state an offense only when the facts alleged on its face fail to make out an offense against the State." (quotation and brackets omitted)). Whether the defendant made the statements alleged in the indictments raises an issue of proof that is distinct from the indictments' sufficiency. The defendant could have argued that a fatal variance existed between the indictments and the evidence offered at trial. *See State v. Keegan*, 106 N.H. 152, 154 (1965). He did not make this argument, however, and therefore we need not address it.

We also disagree that the indictments returned against the defendant are insufficient because they do not allow him "to assure jury unanimity." This argument rests upon the faulty premise that the sufficiency of an indictment depends in part on its ability "to assure jury unanimity." As we have consistently held, the sufficiency of an indictment is measured against the defendant's ability to "prepare for trial and avoid double jeopardy." *Ortiz*, 162 N.H. at 588.

In support of his argument, the defendant relies solely upon *State v. Greene*, 137 N.H. 126 (1993). In *Greene*, a complaint for misdemeanor simple assault charged that the defendant "did knowingly cause unprivileged physical contact" with a police officer when she "punch[ed] the [officer] in the face with her fist and in the torso with her fist and did further kick him about the body." *Greene*, 137 N.H at 127 (quotation omitted). At trial, the trial court failed to instruct the jury that it had to agree "to the factual predicate constituting the element of unprivileged physical contact." *Id.* at 131. We reversed. We held that "[w]here discrete factual predicates can provide alternative bases for finding an element of the offense to have been established, a defendant is entitled to jury unanimity as to the factual predicate supporting a finding of guilt." *Id.* at 129.

Contrary to the defendant's argument, *Greene* does not stand for the proposition that the sufficiency of an indictment depends upon the defendant's ability "to assure jury unanimity." In *Greene*, the defendant did not challenge the sufficiency of the charging document, and we did not address the issue. Rather, we held that the trial court's *jury instruction* was in

error because it violated the defendant's right to jury unanimity. *Id.* at 131. Here, the defendant did not object to the court's jury instructions.

■ Because the Federal Constitution affords the defendant no greater protection with respect to the sufficiency of an indictment than the State Constitution, we reach the same result under the Federal Constitution. *Compare Hamling v. United States*, 418 U.S. 87, 117-18 (1974), *with Marshall*, 162 N.H. at 661.[*]

## II. Closing Argument

The defendant next argues that the trial court erred in denying his motion for a mistrial after the prosecutor, in his closing argument, twice called the defendant a "dirty cop" and referred to him as a "mope." He contends that the prosecutor "failed to place his argument securely within the framework of the evidence presented at trial" and "crossed the line separating legitimate advocacy from an illegitimate appeal to passion and prejudice." He argues that the epithet "dirty cop" suggested to the jury that the defendant "has negative characteristics beyond those associated with his commission of the alleged perjuries," created "a risk that the jury would convict on an improper basis," and improperly communicated to the

---

[*] In *Marshall*, the defendant argued that the indictment underlying his conviction was insufficient under Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution. *Marshall*, 162 N.H. at 661. He alleged that deficiencies in the indictment "implicate[d] his constitutional rights to due process and a grand jury indictment that alleges all of the elements of the charged offense." *Id.* (quotation and brackets omitted). We addressed his argument only under the State Constitution. *Id.* We declined to address his argument under the Federal Constitution because "the Grand Jury Clause of the Fifth Amendment has not been incorporated into the Fourteenth Amendment, and, thus, does not apply to the states." *Id.* This statement of the law is correct, and consideration of the defendant's claim under the Federal Constitution would not have affected our decision as the Federal Constitution affords a defendant no greater protection with respect to the sufficiency of an indictment. To be clear, however, a criminal defendant's federal constitutional right to an indictment that provides adequate notice of the charged offense applies to the states through the Due Process Clause of the Fourteenth Amendment. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."); *United States ex rel. Ballard v. Bengston*, 702 F.2d 656, 660 (7th Cir. 1983) ("Because the constitutional requirement of a grand jury indictment is not applicable to the states, the issue of the sufficiency of the indictment is largely one of state law. However, the validity of an indictment is subject to measurement against general fourteenth amendment guarantees of due process." (citation omitted)); *Chandler v. Moscicki*, 253 F. Supp. 2d 478, 486 (W.D.N.Y. 2003) ("As applicable to the states, the Fourteenth Amendment's due process clause generally has been interpreted as requiring that a defendant is entitled to fair notice of the charges against him." (quotation and brackets omitted)). Accordingly, lest there be any confusion, where a defendant challenges the sufficiency of an indictment under the Federal Constitution, our state courts must address the claim. *See State v. Lamarche*, 157 N.H. 337, 341 (2008).

jury the prosecutor's "personal opinion that the defendant was a 'dirty cop.'" He makes no argument as to why the prosecutor's use of the term "mope" was improper or prejudicial.

■■ "In examining claims of prosecutorial misconduct during closing argument, we face the delicate task of balancing a prosecutor's broad license to fashion argument with the need to ensure that a defendant's rights are not compromised in the process." *State v. Mussey*, 153 N.H. 272, 280 (2006) (quotation omitted). "[A] prosecutor may draw reasonable inferences from the facts proven and has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge them to draw inferences of guilt from the evidence." *State v. Demond-Surace*, 162 N.H. 17, 26 (2011) (quotation omitted). At the same time, prosecutors may not "profess to the jury their personal opinions as to the credibility of a witness or the guilt of the accused," *State v. Bujnowski*, 130 N.H. 1, 4 (1987), and "there must be limits to pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice." *LeBlanc v. American Honda Motor Co.*, 141 N.H. 579, 582 (1997) (quotation omitted). "Mistrial is the proper remedy only if the evidence or comment complained of is not merely improper, but is so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions." *State v. Willey*, 163 N.H. 532, 538 (2012). "We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion." *State v. Guay*, 162 N.H. 375, 378 (2011) (quotation omitted).

In closing argument, the prosecutor asked the jury to compare the testimony of the defendant and Officer Mark Iannuccillo:

> When you go in the deliberation room you decide who's lying to you, [the defendant] or Officer Iannuccillo. *There is a dirty cop in this case.* He's right there. And it's too bad that we even have to refer to him as an ex-cop. It's a damn shame.

At the end of his closing argument, the prosecutor stated:

> Their lies didn't work before, ladies and gentlemen, they're not working today. Use your common sense, look at the transcripts. The State asks that you find [the defendant] guilty of all the charges, because he is guilty. As he sits there today right over there, the *dirty ex-cop*, the State asks that you tell him that.

■■ We conclude that in the context of the facts of this case, the prosecutor's references to the defendant as a "dirty cop" and "dirty ex-cop" were not improper. Contrary to the defendant's argument, the prosecutor

did not express his personal opinion, or "illegitimate[ly] appeal to passion and prejudice." Evidence adduced at trial revealed that the defendant had formerly served as a police officer in Massachusetts. In stating that "[t]here is a dirty cop in this case," the prosecutor asked the jury to compare the allegedly perjurious testimony of the defendant and the testimony of Officer Iannuccillo. Similarly, in asking the jury to tell the defendant that he was a "dirty ex-cop," the prosecutor directed the jury to use its common sense and to look at the transcripts — that is, to examine the evidence. The prosecutor properly grounded his argument in the evidence presented at trial, and asked the jury "to draw inferences of guilt from the evidence." *Demond-Surace*, 162 N.H. at 26 (quotation omitted). Furthermore, the prosecutor's characterizations of the defendant as a "dirty cop" and "dirty ex-cop" were not improper simply because they may have suggested "negative characteristics beyond those associated with" the crime of perjury. *Cf. State v. Wood*, 150 N.H. 233, 236 (2003) (use of the term "child molester" did not amount to prosecutorial misconduct); *State v. Kepple*, 155 N.H. 267, 271-72 (2007) (defense counsel not ineffective for failing to object to prosecutor's characterization of defendant as a "predator"). In context, the terms "dirty cop" and "dirty ex-cop" merely summarized the prosecutor's contention that the defendant was guilty of perjury, and were not being used to express his personal opinion. *See Wood*, 150 N.H. at 236.

Given that the defendant has not argued why the prosecutor's use of the term "mope" was improper or prejudicial, we need not address this issue. We conclude that the trial court sustainably exercised its discretion in denying the defendant's motion for a mistrial. *Guay*, 162 N.H. at 378.

Although the defendant raised other issues in his notice of appeal, he has not briefed them, and, therefore, they are deemed waived. *See In re Estate of King*, 149 N.H. 226, 230 (2003).

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.